IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FABIAN CHEVALIER MILLS,

    Petitioner,                        No. CIV S-03-0264 DFL DAD P

    vs.

D. L. RUNNEL, Warden,

    Respondent.                     FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the judgment entered against him on December 4, 2000 in the Solano County Superior Court on charges of rape with a foreign object, burglary, false imprisonment and robbery. He seeks relief on the grounds that his trial counsel rendered ineffective assistance and the evidence was insufficient to support his conviction. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////
/////
/////
/////

PROCEDURAL AND FACTUAL BACKGROUND[1]

Fabian Mills appeals from a judgment entered after a jury convicted him of genital penetration by a foreign object by force (Pen. Code,[2] § 289, subd. (a)(1)), burglary (§ 459), false imprisonment (§ 236), and robbery (§ 211). . . .

On December 10, 1999, 83-year-old Mary R. (hereafter R.) was sleeping in her home in Vallejo when she was awakened by a man, later identified as appellant, who was climbing in through her bedroom window. Appellant's face was covered by a mask. He was wearing a green plaid shirt and dark pants. Appellant's hands were covered by socks, and he was wearing R.'s straw hat. Appellant smelled so bad that it made R. sick.

Appellant asked R. for money. R. said she had none. Appellant led R. to the living room where he had her remove her nightgown and bra. Appellant then told R. to bend over and he stuck his "whole fist" into her vagina. Appellant removed his hand and asked R. if she had enjoyed it. She said no.

At some point during this process, appellant armed himself with a knife taken from R.'s kitchen. He again demanded money. Appellant took $60 from R.'s purse and had her write him a check for $20. R asked appellant if she could put her nightgown back on. Appellant said yes. He told her to sit in a chair and not move.

When appellant left, R. ran next door to where a neighbor, Christine Saporito, was outside her house warming up her car. R. told Saporito what had happened. While doing so, a man wearing dark clothing came out of the bushes on a bike and fled down the street.

The police were notified about the crime at 5:32 a.m. Seven minutes later, at 5:39, Officer John Ehman was driving to the scene of the crime when he noticed appellant standing in front of a house four to six blocks away. Appellant matched the description of the suspect, so Ehman stopped to speak with him. Appellant was nervous and he had an extremely bad body odor. Ehman drove appellant to R.'s house. R. positively identified him as the man who had assaulted her that morning.

Based on these facts, an information was filed charging appellant with the offenses set forth above. The information also alleged

---

[1] The following summary is drawn from the February 26, 2002, opinion by the California Court of Appeal for the First Appellate District (hereinafter Opinion), at pgs. 1-3, filed on June 6, 2003, as Exhibit E to Respondent's Answer.

[2] Unless otherwise indicated, all further section references are to the Penal Code.

appellant had one prior strike within the meaning of the three strikes law (§667, subds. (b) - (I)), that appellant was personally armed with a knife under section 12022, subdivision (b)(1) and section 1192.7, subdivision (c)(23), that the victim was over the age of 65 within the meaning of section 667.9, subdivision (a), and that count 1 (alleging genital penetration) qualified under the "one strike" provisions of section 667.61.

The case proceeded to trial where the prosecution presented evidence along the lines set forth above. Appellant denied the charges and presented an alibi defense. He presented testimony from a woman, Treneece Houston, who lived in the area where appellant was arrested. She said she saw appellant 10 - 15 minutes before the police arrived.

The jurors apparently rejected this defense. They convicted appellant on all counts and found the special allegations to be true. Appellant admitted the prior conviction allegation.

Subsequently, the court sentenced appellant to 70 years to life in prison. This appeal followed.

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims[3]

   A. Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence introduced at his trial to support his convictions. Petitioner notes that the evidence established he was apprehended four to six blocks away from the victim's home less than five minutes after the intruder left.

---

[3] For purposes of clarity, this court will evaluate petitioner's claims in the reverse order in which they were presented in the petition.

1  (Reporter's Transcript on Appeal (RT) at 61, 127-28, 138, 142, 362.)  He argues that he could
2  not have traveled such a distance in less than five minutes.  Petitioner also notes that although the
3  intruder wore white socks or gloves on his hands and took three twenty-dollar bills and a check
4  from the victim's home, none of these items was found on or near petitioner.  (Id. at 36, 139.)
5  Further, although the victim stated that the intruder wore her hat, there were no fibers from the
6  victim's hat found on petitioner's own hat.  (Id. at 193.)  In addition, there were no fibers from
7  the victim's carpet found on petitioner's shoes and a mud print taken from outside the victim's
8  house did not match a mud print taken from petitioner's shoes.  (Id. at 187-89.)  The victim's
9  neighbor, who saw the intruder bicycle away from the victim's house, could not identify
10 petitioner at trial and told a defense investigator that petitioner was not the person she saw
11 leaving the victim's house.  (Id. at 82, 103, 114, 116.)  Petitioner also notes that he had an alibi.
12 Specifically, Ms. Houston testified that she had been talking to petitioner for approximately ten
13 minutes before she went into her house to make him a sandwich and that while she was in the
14 house petitioner was apprehended.  (Id. at 225-27.)  Petitioner claims that all of this evidence cast
15 sufficient doubt on the identity of the perpetrator that his convictions should be set aside.

16          The Due Process Clause of the Fourteenth Amendment "protects the accused
17 against conviction except upon proof beyond a reasonable doubt of every fact necessary to
18 constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There
19 is sufficient evidence to support a conviction if, "after viewing the evidence in the light most
20 favorable to the prosecution, any rational trier of fact could have found the essential elements of
21 the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also
22 Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question
23 under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond
24 a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,
25 443 U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when
26 challenging the sufficiency of the evidence used to obtain a state conviction on federal due

process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n .13 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

The California Court of Appeal rejected petitioner's insufficiency of the evidence argument based upon the following reasoning:

> Appellant contends his conviction must be reversed because the evidence was not sufficient to support the conclusion that he was the one who committed the charged crimes.
>
> * * *
>
> R.'s identification was supported by the fact that appellant was found very near to the scene of the crime (only blocks away), and the fact that he matched the description R. had provided to the police precisely: i.e., a black man wearing a dark waist length jacket, a plaid shirt underneath, dark pants, tennis shoes, and a dark colored cap. Furthermore, appellant exhibited the same vile odor that R. had described.

6

> We believe rational jurors considering this evidence could conclude, beyond a reasonable doubt, that appellant committed these crimes. Appellant's conviction is supported by substantial evidence.
>
> Appellant contends the evidence was not sufficient. He notes that the person who committed the crime wore socks on his hands, and took $60 in cash and a $20 check. Noting that none of those items were found on his person when he was arrested, appellant contends he "could not possibly have been the man who committed the crimes because [he] could not have ridden a bicycle to the place where he was stopped and gotten rid of the bicycle, money and other items in the less-than-five minutes between the 911 call and his stop by police." Appellant also notes that R.'s neighbor, Saporito, could not identify him at trial, that a footprint found outside of R.'s home did not match his own, and that the hat he was wearing at the time of his arrest did not have on it any fibers from the straw hat R. had described. Finally, appellant notes that his friend, Houston, said she was with him around the time when the crimes were committed.
>
> Each of these factors can be interpreted as supporting the conclusion that appellant did not commit these crimes. However none of them, either alone or in combination, compel a finding of innocence. For example, the jurors may well have concluded that appellant could easily have ridden a bicycle four to six blocks in less than five minutes, and that he discarded the bicycle and items he stole along the way to avoid detection. Similarly, the jurors could have concluded that footprints found outside R.'s home were unrelated to the crime, and that Houston's alibi testimony was simply not credible.
>
> On appeal we are obligated to view the evidence in the light most favorable to the judgment below. Viewed in that light, the evidence presented at trial was more than sufficient.

(Opinion at 3-4.)

The state court's conclusion that there was sufficient evidence to establish petitioner's guilt beyond a reasonable doubt is not erroneous under the federal standards set forth above, nor is it contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. As noted by the California Court of Appeal, the fact that there was evidence supporting petitioner's claim of innocence is not dispositive. Notwithstanding any exculpatory evidence, there was substantial evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner was guilty of

7

1   the crimes charged against him.  Because there was substantial evidence presented at trial to
2   support petitioner's conviction on these charges, the state court's analysis of this claim is not
3   "objectively unreasonable."  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  See also 28 U.S.C.
4   § 2254(d)(1).  Accordingly, petitioner is not entitled to relief on this claim.

   B.  Ineffective Assistance of Counsel

6           Petitioner claims that his trial counsel rendered ineffective assistance because of
7   his failure to move to suppress evidence of a prior burglary and theft of money from the victim's
8   home.  (Pet., second exhibit (P&A) at 16-27.)  This claim was raised for the first time in a
9   petition for writ of habeas corpus filed in the California Supreme Court.  (Answer, Ex. C.)  That
10  petition was summarily denied by order dated February 26, 2002.  (Answer, Ex. F.)  Because the
11  state court did not provide a reason for its decision, this court must independently review the
12  record to determine whether the state court clearly erred in its application of federal law.  Himes,
13  336 F.3d at 853.

14          The background to petitioner's claim of ineffective assistance is as follows.  At
15  petitioner's trial, the victim testified that three days before the instant offenses were committed,
16  she went to the bank and withdrew $700 in cash, which she put into her address book.  (RT at
17  30.)  The following colloquy then occurred:

>   and I don't know how he found it, but he took my address book,
>   which is – I had everything written in it –
>
>   Q.  Did someone break into your house, before the incident we're
>   talking about, on December 10th?
>
>   A.  It was the same man, identical to everything.  The two
>   robberies were identical: same hat, completely – well, I don't know
>   if he was completely covered, but he did leave a pair of stockings
>   and my hat thrown in the driveway of my garage.
>
>   Q.  And on that occasion, how did you know someone had broken
>   into your house?
>
>   A.  Well, I was sound asleep in my chair.  I woke up about quarter
>   to 2:00 in the morning, and I noticed my costume jewelry was all
>   over my bed.  My purses were on the floor.  Then I looked up and

8

1         saw my window open, which wasn't open for three years because it was stuck. And then I started to panic, and I went to the telephone and I called my son.

2

3         * * *

4         Q. On the second time when the man came back to your house, did you ask him about that prior occasion?

5

6         A. Yes. When he was in there, he told me not to call the police. I says, "Well, I didn't call the police the first time, did I? And that's all that was said there.

7

8         Q. And when you said you didn't call the police the first time, did he have any response for you?

9         A. No.

10 (Id. at 30-31.)

11         Petitioner's trial counsel did not object to this testimony or file a motion in limine

12 to exclude it. In a declaration attached to petitioner's state habeas petition, counsel states:

13         2. Prior to trial, I received discovery materials from the prosecution that stated that someone had entered the house of the victim, Mary Russell, a few days before December 10, 1999 and had taken money.

14

15

16         3. I did not move to exclude or suppress that evidence either before trial or at trial, because I did not think such a motion would be granted. I had no tactical or strategic reason to refrain from objecting to the introduction of that evidence.

17

18 (Pet., third exhibit, at 1.)

19         Petitioner claims that his trial counsel's failure to object to the victim's testimony

20 about the prior burglary constituted ineffective assistance. He argues that the evidence was

21 irrelevant and inflammatory. He notes that the identity of the perpetrator of the first burglary was

22 never established because the victim was asleep at the time the burglary occurred. Therefore,

23 according to petitioner, "the uncharged crime did not tend to establish petitioner's identity as to

24 the second crime because there was no evidence that petitioner committed the first crime!"

25 (P&A at 21.) Petitioner also argues that the characteristics of the first burglary were not

26 sufficiently similar to the second burglary to have any relevance to the issue of identity at his

trial. He argues that the only possible inferences flowing from this evidence were that the victim was entitled to sympathy and that petitioner was "an evil man." (Id. at 22.) Petitioner contends that had his trial counsel filed a motion to suppress the victim's testimony regarding the first burglary, it would have been granted by the trial court.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Assuming arguendo that trial counsel's failure to object to the victim's testimony about the previous burglary of her home fell below an objective standard of reasonableness, petitioner is not entitled to relief on this claim because he has failed to demonstrate prejudice. "To show prejudice under Strickland resulting from the failure to file a motion, a defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (citing Kimmelman, 477 U.S. at 373-74) (so stating with respect to failure to file a motion to suppress on Fourth Amendment grounds)). See also Boyde v. Brown, 404 F.3d 1159, 1173-74 (9th Cir.) as amended on rehearing 421 F.3d (9th Cir. 2005) (same standard governs prejudice showing in the context of counsel's failure to object to evidence of a defendant's prior crimes).

Even if the trial court had granted a motion to suppress or strike the victim's testimony about the prior burglary, there is not a reasonable probability that the outcome of the proceedings would have been more favorable to petitioner. As noted by the state appellate court, the evidence against petitioner was substantial. The victim identified petitioner as her attacker a short time after the crime occurred. Her identification was supported by the fact that petitioner "was found very near to the scene of the crime (only blocks away), and the fact that he matched the description [the victim] had provided to the police precisely: i.e., a black man wearing a dark waist length jacket, a plaid shirt underneath, dark pants, tennis shoes, and a dark colored cap." (Opinion at 3.) "Furthermore, [petitioner] exhibited the same vile odor that [the victim] had described." (Id.) The victim was also quite certain that the shirt petitioner was wearing when the police brought him to her home immediately after his arrest was the same shirt worn by the perpetrator who had confronted her inside her home earlier that morning. (RT at 26, 37.) As argued by respondent, it was the victim's certainty in this respect, and not evidence that the same

person may have burglarized the victim's home previously, that constituted compelling evidence of petitioner's guilt.

In light of this evidence of petitioner's guilt, the challenged testimony could not have had a significant impact on the verdict. The evidence introduced at petitioner's trial about the prior burglary at the victim's home was inconclusive and extremely vague. Indeed, the victim testified that she was asleep in her chair during this first burglary and that she awoke only after the perpetrator had left the residence. The jury was therefore aware that she was unable to identify the first burglar. Most importantly, the victim did not testify that she saw petitioner burglarize her house on the first occasion. In any event, the circumstances of the earlier burglary of the victim's home were substantially less prejudicial than the circumstances of the second burglary and assault with which petitioner was charged. The court also notes that this is not a case where evidence that the defendant committed a prior act was used to infer that the defendant also committed the charged offenses. The prosecution did not even mention the prior burglary in her closing or rebuttal arguments.[4] Accordingly, even if the prior act evidence had been excluded, the outcome of petitioner's trial would not have been affected.

The state court's rejection of petitioner's claim of ineffective assistance of trial counsel is not contrary to or an unreasonable application of clearly established federal due process principles, nor is it based on an unreasonable determination of the facts of this case.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

---

[4] If anything, the victim's testimony may have suggested only that because petitioner committed the charged offenses he also was probably responsible for the earlier break-in. Under these circumstances, petitioner's reliance on cases concerning the admissibility of prior crimes evidence to prove identity at a current trial is misplaced. Here, the prior act evidence was irrelevant to the issue of identity at petitioner's trial.

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 1, 2006.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:mills264.hc